THE AMERICAN LAW INSTITUTE

in association with

THE INTERNATIONAL INSOLVENCY INSTITUTE

# Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases

*As Adopted and Promulgated in Transnational Insolvency:*
*Principles of Cooperation Among the NAFTA Countries*

BY

THE AMERICAN LAW INSTITUTE
At Washington, D.C., May 16, 2000

*And as Adopted by*

THE INTERNATIONAL INSOLVENCY INSTITUTE
At New York, June 10, 2001



The American Law Institute
4025 Chestnut Street
Philadelphia, Pennsylvania 19104-3099
Telephone: (215) 243-1600
Telecopier: (215) 243-1636
E-mail: ali@ali.org
Website: http://www.ali.org



The International Insolvency Institute
Scotia Plaza, Suite 2100
40 King Street West
Toronto, Ontario M5H 3C2
Telephone: (416) 869-5757
Telecopier: (416) 360-8877
E-mail: info@iiiglobal.org
Website: http://www.iiiglobal.org

THE AMERICAN LAW INSTITUTE

in association with

THE INTERNATIONAL INSOLVENCY INSTITUTE

## Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases

*As Adopted and Promulgated in Transnational Insolvency:*
*Principles of Cooperation Among the NAFTA Countries*

BY

THE AMERICAN LAW INSTITUTE
At Washington, D.C., May 16, 2000

*And as Adopted by*

THE INTERNATIONAL INSOLVENCY INSTITUTE
At New York, June 10, 2001

COPYRIGHT © 2003

By

THE AMERICAN LAW INSTITUTE

All rights reserved
Printed in the United States of America

The *Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases* were developed by The American Law Institute during and as part of its Transnational Insolvency Project and the use of the *Guidelines* in cross-border cases is specifically permitted and encouraged.

The text of the *Guidelines* is available in English and several other languages including Chinese, French, German, Italian, Japanese, Korean, Portuguese, Russian, Swedish, and Spanish on the website of the International Insolvency Institute at http://www.iiiglobal.org/international/guidelines.html.

The American Law Institute
4025 Chestnut Street
Philadelphia, Pennsylvania 19104-3099
Telephone: (215) 243-1600
Telecopier: (215) 243-1636
E-mail: ali@ali.org
Website: http://www.ali.org

The International Insolvency Institute
Scotia Plaza, Suite 2100
40 King Street West
Toronto, Ontario  M5H 3C2
Telephone: (416) 869-5757
Telecopier: (416) 360-8877
E-mail: info@iiiglobal.org
Website: http://www.iiiglobal.org

ii

# Foreword by the Director of
# The American Law Institute

In May of 2000 The American Law Institute gave its final approval to the work of the ALI's Transnational Insolvency Project. This consisted of the four volumes eventually published, after a period of delay required by the need to take into account a newly enacted Mexican Bankruptcy Code, in 2003 under the title of *Transnational Insolvency: Cooperation Among the NAFTA Countries*. These volumes included both the first phase of the project, separate Statements of the bankruptcy laws of Canada, Mexico, and the United States, and the project's culminating phase, a volume comprising *Principles of Cooperation Among the NAFTA Countries*. All reflected the joint input of teams of Reporters and Advisers from each of the three NAFTA countries and a fully transnational perspective. Published by Juris Publishing, Inc., they can be ordered on the ALI website (www.ali.org).

A byproduct of our work on the Principles volume, these *Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases* appeared originally as Appendix B of that volume and were approved by the ALI in 2000 along with the rest of the volume. But the *Guidelines* have played a vital and influential role apart from the *Principles*, having been widely translated and distributed, cited and applied by courts, and independently approved by both the International Insolvency Institute and the Insolvency Institute of Canada. Although they were initially developed in the context of a project arrived at improving cooperation among bankruptcy courts within the NAFTA countries, their acceptance by the III, whose members include leaders

iii

of the insolvency bar from more than 40 countries, suggests a pertinence and applicability that extends far beyond the ambit of NAFTA. Indeed, there appears to be no reason to restrict the *Guidelines* to insolvency cases; they should prove useful whenever sensible and coherent standards for cooperation among courts involved in overlapping litigation are called for. See, e.g., American Law Institute, International Jurisdiction and Judgments Project § 12(e) (Tentative Draft No. 2, 2004).

The American Law Institute expresses its gratitude to the International Insolvency Institute for its continuing efforts to publicize the *Guidelines* and to make them more widely known to judges and lawyers around the world; to III Chair E. Bruce Leonard of Toronto, who as Canadian Co-Reporter for the Transnational Insolvency Project was the principal drafter of the Guidelines in English and has been primarily responsible for arranging and overseeing their translation into the various other languages in which they now appear; and to the translators themselves, whose work will make the *Guidelines* much more universally accessible. We hope that this greater availability, in these new English and bilingual editions, will help to foster better communication, and thus better understanding, among the diverse courts and legal systems throughout our increasingly globalized world.

LANCE LIEBMAN
*Director*
*The American Law Institute*

January 2004

iv

# Foreword by the Chair of the International Insolvency Institute

The International Insolvency Institute, a world-wide association of leading insolvency professionals, judges, academics, and regulators, is pleased to recommend the adoption and the application in cross-border and multinational cases of The American Law Institute's *Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases*. The *Guidelines* were reviewed and studied by a Committee of the III and were unanimously approved by its membership at the III's Annual General Meeting and Conference in New York in June 2001.

Since their approval by the III, the *Guidelines* have been applied in several cross-border cases with considerable success in achieving the coordination that is so necessary to preserve values for all of the creditors that are involved in international cases. The III recommends without qualification that insolvency professionals and judges adopt the *Guidelines* at the earliest possible stage of a cross-border case so that they will be in place whenever there is a need for the courts involved to communicate with each other, e.g., whenever the actions of one court could impact on issues that are before the other court.

Although the *Guidelines* were developed in an insolvency context, it has been noted by litigation professionals and judges that the *Guidelines* would be equally valuable and constructive in any international case where two or more courts are involved. In fact, in multijurisdictional litigation, the positive effect of the *Guidelines* would be even greater in cases where several courts are involved. It

v

is important to appreciate that the *Guidelines* require that all domestic practices and procedures be complied with and that the *Guidelines* do not alter or affect the substantive rights of the parties or give any advantage to any party over any other party.

The International Insolvency Institute expresses appreciation to its members who have arranged for the translation of the *Guidelines* into French, German, Italian, Korean, Japanese, Chinese, Portuguese, Russian, and Swedish and extends its appreciation to The American Law Institute for the translation into Spanish. The III also expresses its appreciation to The American Law Institute, the American College of Bankruptcy, and the Ontario Superior Court of Justice Commercial List Committee for their kind and generous financial support in enabling the publication and dissemination of the *Guidelines* in bilingual versions in major countries around the world.

Readers who become aware of cases in which the *Guidelines* have been applied are highly encouraged to provide the details of those cases to the III (fax: 416-360-8877; e-mail: *info@iiiglobal.org*) so that everyone can benefit from the experience and positive results that flow from the adoption and application of the *Guidelines*. The continuing progress of the *Guidelines* and the cases in which the *Guidelines* have been applied will be maintained on the III's website at *www.iiiglobal.org*.

The III and all of its members are very pleased to have been a part of the development and success of the *Guidelines* and commend The American Law Institute for its vision in developing the *Guidelines* and in supporting

vi

their worldwide circulation to insolvency professionals, judges, academics, and regulators. The use of the *Guidelines* in international cases will change international insolvencies and reorganizations for the better forever, and the insolvency community owes a considerable debt to The American Law Institute for the inspiration and vision that has made this possible.

> E. BRUCE LEONARD
> *Chairman*
> *The International Insolvency Institute*

Toronto, Ontario
March 2004

## Judicial Preface

We believe that the advantages of co-operation and co-ordination between Courts is clearly advantageous to all of the stakeholders who are involved in insolvency and reorganization cases that extend beyond the boundaries of one country. The benefit of communications between Courts in international proceedings has been recognized by the United Nations through the *Model Law on Cross-Border Insolvency* developed by the United Nations Commission on International Trade Law and approved by the General Assembly of the United Nations in 1997. The advantages of communications have also been recognized in the European Union Regulation on Insolvency Proceedings which became effective for the Member States of the European Union in 2002.

The *Guidelines for Court-to-Court Communications in Cross-Border Cases* were developed in the American Law Institute's Transnational Insolvency Project involving the NAFTA countries of Mexico, the United States and Canada. The *Guidelines* have been approved by the membership of the ALI and by the International Insolvency Institute whose membership covers over 40 countries from around the world. We appreciate that every country is unique and distinctive and that every country has its own proud legal traditions and concepts. The *Guidelines* are not intended to alter or change the domestic rules or procedures that are applicable in any country and are not intended to affect or curtail the substantive rights of any party in proceedings before the Courts. The *Guidelines* are intended to encourage and facilitate co-operation in international cases while observing all applicable rules and procedures of the Courts that are respectively involved.

The *Guidelines* may be modified to meet either the procedural law of the jurisdiction in question or the particular circumstances in individual cases so as to achieve the greatest level of co-operation possible between the Courts in dealing with a multinational insolvency or liquidation. The *Guidelines*, however, are not restricted to insolvency cases and may be of assistance in dealing with non-insolvency cases that involve more than one country. Several of us have already used the *Guidelines* in cross-border cases and would encourage stakeholders and counsel in international cases to consider the advantages that could be achieved in their cases from the application and implementation of the *Guidelines*.

|  |  |
|---|---|
| Mr. Justice David Baragwanath<br>High Court of New Zealand<br>Auckland, New Zealand | Chief Justice Donald I. Brenner<br>Supreme Court of British Columbia<br>Vancouver |
| Hon. Sidney B. Brooks<br>United States Bankruptcy Court<br>District of Colorado<br>Denver | Hon. Charles G. Case, II<br>United States Bankruptcy Court<br>District of Arizona<br>Phoenix |

Mr. Justice Miodrag Dordević
Supreme Court of Slovenia
Ljubljana

Mr. Justice J.M. Farley
Ontario Superior Court of Justice
Toronto

Hon. James L. Garrity, Jr.
United States Bankruptcy Court
Southern District of New York (Ret'd)
Shearman & Sterling
New York

Hon. Allan L. Gropper
Southern District of New York
United States Bankruptcy Court
New York

Mr. Justice Paul R. Heath
High Court of New Zealand
Auckland, New Zealand

Hon. Hyungdu Kim
Supreme Court of Korea
Seoul

Chief Judge Burton R. Lifland
United States Bankruptcy Appellate
Panel for the Second Circuit
New York

Mr. Justice Gavin Lightman
Royal Courts of Justice
London

Hon. George Paine II
United States Bankruptcy Court
District of Tennessee
Nashville

Hon. Chiyong Rim
District Court
Western District of Seoul
Seoul, Korea

Mr. Justice Adolfo A.N. Rouillon
Court of Appeal
Rosario, Argentina

Hon. Shinjiro Takagi
Supreme Court of Japan (Ret'd)
Industrial Revitalization Corporation of Japan
Tokyo

Mr. Justice Wisit Wisitsora – At
Business Reorganization Office
Government of Thailand
Bangkok

Mr. Justice R.H. Zulman
Supreme Court of Appeal of South Africa
Parklands

# Guidelines
## Applicable to Court-to-Court Communications in Cross-Border Cases

### Introduction:

One of the most essential elements of cooperation in cross-border cases is communication among the administrating authorities of the countries involved. Because of the importance of the courts in insolvency and reorganization proceedings, it is even more essential that the supervising courts be able to coordinate their activities to assure the maximum available benefit for the stakeholders of financially troubled enterprises.

These Guidelines are intended to enhance coordination and harmonization of insolvency proceedings that involve more than one country through communications among the jurisdictions involved. Communications by judges directly with judges or administrators in a foreign country, however, raise issues of credibility and proper procedures. The context alone is likely to create concern in litigants unless the process is transparent and clearly fair. Thus, communication among courts in cross-border cases is both more important and more sensitive than in domestic cases. These Guidelines encourage such communications while channeling them through transparent procedures. The Guidelines are meant to permit rapid cooperation in a developing insolvency case while ensuring due process to all concerned.

A Court intending to employ the Guidelines — in whole or part, with or without modifications — should adopt them formally before applying them. A Court may wish to make its adoption of the Guidelines contingent upon, or temporary until, their adoption by other courts concerned in the matter. The adopting

1

Court may want to make adoption or continuance conditional upon adoption of the Guidelines by the other Court in a substantially similar form, to ensure that judges, counsel, and parties are not subject to different standards of conduct.

The Guidelines should be adopted following such notice to the parties and counsel as would be given under local procedures with regard to any important procedural decision under similar circumstances. If communication with other courts is urgently needed, the local procedures, including notice requirements, that are used in urgent or emergency situations should be employed, including, if appropriate, an initial period of effectiveness, followed by further consideration of the Guidelines at a later time. Questions about the parties entitled to such notice (for example, all parties or representative parties or representative counsel) and the nature of the court's consideration of any objections (for example, with or without a hearing) are governed by the Rules of Procedure in each jurisdiction and are not addressed in the Guidelines.

The Guidelines are not meant to be static, but are meant to be adapted and modified to fit the circumstances of individual cases and to change and evolve as the international insolvency community gains experience from working with them. They are to apply only in a manner that is consistent with local procedures and local ethical requirements. They do not address the details of notice and procedure that depend upon the law and practice in each jurisdiction. However, the Guidelines represent approaches that are likely to be highly useful in achieving efficient and just resolutions of cross-border insolvency issues. Their use, with such modifications and under such circumstances as may be appropriate in a particular case, is therefore recommended.

2

### Guideline 1

Except in circumstances of urgency, prior to a communication with another Court, the Court should be satisfied that such a communication is consistent with all applicable Rules of Procedure in its country. Where a Court intends to apply these Guidelines (in whole or in part and with or without modifications), the Guidelines to be employed should, wherever possible, be formally adopted before they are applied. Coordination of Guidelines between courts is desirable and officials of both courts may communicate in accordance with Guideline 8(d) with regard to the application and implementation of the Guidelines.

### Guideline 2

A Court may communicate with another Court in connection with matters relating to proceedings before it for the purposes of coordinating and harmonizing proceedings before it with those in the other jurisdiction.

### Guideline 3

A Court may communicate with an Insolvency Administrator in another jurisdiction or an authorized Representative of the Court in that jurisdiction in connection with the coordination and harmonization of the proceedings before it with the proceedings in the other jurisdiction.

### Guideline 4

A Court may permit a duly authorized Insolvency Administrator to communicate with a foreign Court directly, subject to the approval of the foreign Court, or through an Insolvency Administrator in the other jurisdiction or through an autho-

3

rized Representative of the foreign Court on such terms as the
Court considers appropriate.

### Guideline 5

A Court may receive communications from a foreign
Court or from an authorized Representative of the foreign
Court or from a foreign Insolvency Administrator and should
respond directly if the communication is from a foreign Court
(subject to Guideline 7 in the case of two-way communica-
tions) and may respond directly or through an authorized
Representative of the Court or through a duly authorized
Insolvency Administrator if the communication is from a for-
eign Insolvency Administrator, subject to local rules concern-
ing ex parte communications.

### Guideline 6

Communications from a Court to another Court may take
place by or through the Court:

(a) Sending or transmitting copies of formal orders,
judgments, opinions, reasons for decision, endorse-
ments, transcripts of proceedings, or other docu-
ments directly to the other Court and providing ad-
vance notice to counsel for affected parties in such
manner as the Court considers appropriate;

(b) Directing counsel or a foreign or domestic Insolvency
Administrator to transmit or deliver copies of docu-
ments, pleadings, affidavits, factums, briefs, or other
documents that are filed or to be filed with the Court
to the other Court in such fashion as may be appropri-
ate and providing advance notice to counsel for affect-

4

ed parties in such manner as the Court considers appropriate;

(c) Participating in two-way communications with the other Court by telephone or video conference call or other electronic means, in which case Guideline 7 should apply.

### Guideline 7

In the event of communications between the Courts in accordance with Guidelines 2 and 5 by means of telephone or video conference call or other electronic means, unless otherwise directed by either of the two Courts:

(a) Counsel for all affected parties should be entitled to participate in person during the communication and advance notice of the communication should be given to all parties in accordance with the Rules of Procedure applicable in each Court;

(b) The communication between the Courts should be recorded and may be transcribed. A written transcript may be prepared from a recording of the communication which, with the approval of both Courts, should be treated as an official transcript of the communication;

(c) Copies of any recording of the communication, of any transcript of the communication prepared pursuant to any Direction of either Court, and of any official transcript prepared from a recording should be filed as part of the record in the proceedings and made available to counsel for all parties in both

5

Courts subject to such Directions as to confidentiality as the Courts may consider appropriate; and

(d) The time and place for communications between the Courts should be to the satisfaction of both Courts. Personnel other than Judges in each Court may communicate fully with each other to establish appropriate arrangements for the communication without the necessity for participation by counsel unless otherwise ordered by either of the Courts.

### Guideline 8

In the event of communications between the Court and an authorized Representative of the foreign Court or a foreign Insolvency Administrator in accordance with Guidelines 3 and 5 by means of telephone or video conference call or other electronic means, unless otherwise directed by the Court:

(a) Counsel for all affected parties should be entitled to participate in person during the communication and advance notice of the communication should be given to all parties in accordance with the Rules of Procedure applicable in each Court;

(b) The communication should be recorded and may be transcribed. A written transcript may be prepared from a recording of the communication which, with the approval of the Court, can be treated as an official transcript of the communication;

(c) Copies of any recording of the communication, of any transcript of the communication prepared pursuant to any Direction of the Court, and of any official tran-

6

script prepared from a recording should be filed as part of the record in the proceedings and made available to the other Court and to counsel for all parties in both Courts subject to such Directions as to confidentiality as the Court may consider appropriate; and

(d) The time and place for the communication should be to the satisfaction of the Court. Personnel of the Court other than Judges may communicate fully with the authorized Representative of the foreign Court or the foreign Insolvency Administrator to establish appropriate arrangements for the communication without the necessity for participation by counsel unless otherwise ordered by the Court.

### Guideline 9

A Court may conduct a joint hearing with another Court. In connection with any such joint hearing, the following should apply, unless otherwise ordered or unless otherwise provided in any previously approved Protocol applicable to such joint hearing:

(a) Each Court should be able to simultaneously hear the proceedings in the other Court.

(b) Evidentiary or written materials filed or to be filed in one Court should, in accordance with the Directions of that Court, be transmitted to the other Court or made available electronically in a publicly accessible system in advance of the hearing. Transmittal of such material to the other Court or its public availability in an electronic system should not subject the party filing the material in one Court to the jurisdiction of the other Court.

7

(c) Submissions or applications by the representative of any party should be made only to the Court in which the representative making the submissions is appearing unless the representative is specifically given permission by the other Court to make submissions to it.

(d) Subject to Guideline 7(b), the Court should be entitled to communicate with the other Court in advance of a joint hearing, with or without counsel being present, to establish Guidelines for the orderly making of submissions and rendering of decisions by the Courts, and to coordinate and resolve any procedural, administrative, or preliminary matters relating to the joint hearing.

(e) Subject to Guideline 7(b), the Court, subsequent to the joint hearing, should be entitled to communicate with the other Court, with or without counsel present, for the purpose of determining whether coordinated orders could be made by both Courts and to coordinate and resolve any procedural or nonsubstantive matters relating to the joint hearing.

### Guideline 10

The Court should, except upon proper objection on valid grounds and then only to the extent of such objection, recognize and accept as authentic the provisions of statutes, statutory or administrative regulations, and rules of court of general application applicable to the proceedings in the other jurisdiction without the need for further proof or exemplification thereof.

8

## Guideline 11

The Court should, except upon proper objection on valid grounds and then only to the extent of such objection, accept that Orders made in the proceedings in the other jurisdiction were duly and properly made or entered on or about their respective dates and accept that such Orders require no further proof or exemplification for purposes of the proceedings before it, subject to all such proper reservations as in the opinion of the Court are appropriate regarding proceedings by way of appeal or review that are actually pending in respect of any such Orders.

## Guideline 12

The Court may coordinate proceedings before it with proceedings in another jurisdiction by establishing a Service List that may include parties that are entitled to receive notice of proceedings before the Court in the other jurisdiction ("Non-Resident Parties"). All notices, applications, motions, and other materials served for purposes of the proceedings before the Court may be ordered to also be provided to or served on the Non-Resident Parties by making such materials available electronically in a publicly accessible system or by facsimile transmission, certified or registered mail or delivery by courier, or in such other manner as may be directed by the Court in accordance with the procedures applicable in the Court.

## Guideline 13

The Court may issue an Order or issue Directions permitting the foreign Insolvency Administrator or a representative of creditors in the proceedings in the other jurisdiction or an authorized

9

Representative of the Court in the other jurisdiction to appear
and be heard by the Court without thereby becoming subject to
the jurisdiction of the Court.

### Guideline 14

The Court may direct that any stay of proceedings affecting
the parties before it shall, subject to further order of the Court,
not apply to applications or motions brought by such parties
before the other Court or that relief be granted to permit such
parties to bring such applications or motions before the other
Court on such terms and conditions as it considers appropriate.
Court-to-Court communications in accordance with Guidelines 6
and 7 hereof may take place if an application or motion brought
before the Court affects or might affect issues or proceedings in
the Court in the other jurisdiction.

### Guideline 15

A Court may communicate with a Court in another juris-
diction or with an authorized Representative of such Court in the
manner prescribed by these Guidelines for purposes of coordi-
nating and harmonizing proceedings before it with proceedings
in the other jurisdiction regardless of the form of the proceedings
before it or before the other Court wherever there is commonal-
ity among the issues and/or the parties in the proceedings. The
Court should, absent compelling reasons to the contrary, so com-
municate with the Court in the other jurisdiction where the inter-
ests of justice so require.

### Guideline 16

Directions issued by the Court under these Guidelines are
subject to such amendments, modifications, and extensions as

10

may be considered appropriate by the Court for the purposes described above and to reflect the changes and developments from time to time in the proceedings before it and before the other Court. Any Directions may be supplemented, modified, and restated from time to time and such modifications, amendments, and restatements should become effective upon being accepted by both Courts. If either Court intends to supplement, change, or abrogate Directions issued under these Guidelines in the absence of joint approval by both Courts, the Court should give the other Courts involved reasonable notice of its intention to do so.

### Guideline 17

Arrangements contemplated under these Guidelines do not constitute a compromise or waiver by the Court of any powers, responsibilities, or authority and do not constitute a substantive determination of any matter in controversy before the Court or before the other Court nor a waiver by any of the parties of any of their substantive rights and claims or a diminution of the effect of any of the Orders made by the Court or the other Court.

11