**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 15 |
| | ) | |
| SATISFIED BRAKE PRODUCTS, INC., | ) | Case No. 11-51427 |
| | ) | |
| Debtor in a Foreign Proceeding | ) | Honorable Chief Judge Joseph M. Scott Jr. |
| | ) | |
| | ) | |

**OBJECTION OF BRAKE PARTS, INC. TO APPLICATION FOR PROVISIONAL**
**RELIEF PENDING RECOGNITION OF A FOREIGN MAIN PROCEEDING**

On May 16, 2011, after over *five* months in Canadian insolvency proceedings, Noubar Boyadjian, the purported trustee and receiver (the "Movant") for Satisfied Brake Products, Inc. ("Satisfied"), filed a Chapter 15 petition and the instant Application.[1]  Satisfied's corporate insiders, solely for their benefit, have orchestrated two different Canadian insolvency proceedings (the "Canadian Proceedings") under the Canadian Bankruptcy Insolvency Act (the "BIA").

With respect to the Chapter 15, the Movant did not initiate this proceeding to curtail efforts to take control of Satisfied's U.S.-based property.  Satisfied does not possess any U.S. assets, all of Satisfied's operations occur in Canada, and the vast majority of Satisfied's creditors are Canadian entities.  Instead, the Movant initiated this Chapter 15 proceeding, and sought an extension of the automatic stay in the Application, to thwart the efforts of Brake Parts, Inc. ("BPI") to guard its trade secrets and prevent Satisfied from unlawfully selling products designed using such trade secrets.

---

[1]     Dkt. No. 3, hereinafter the "Application."  In support of this objection, BPI submits the affidavit of Jason Stiehl, counsel for BPI in the Kentucky Litigation, hereinafter the "Stiehl Aff."

Satisfied, as a result of conduct described as "industrial espionage" by U.S. District Judge Karl S. Forester, is subject to a preliminary injunction entered in the Kentucky Litigation.[2]  Judge Forester entered the preliminary injunction after determining that Satisfied and certain of its employees and corporate insiders had stolen trade secrets from BPI and used them to develop products Satisfied sold in the market.  The preliminary injunction prevents, *inter alia*, Satisfied from selling products utilizing BPI's trade secrets.  Therefore, no Chapter 15 proceeding, or the instant Application, is necessary to "protect" Satisfied's assets.

The filing and timing of the petition is clearly a litigation tactic - as the Movant only sought relief in this case on the eve of (a) scheduled depositions of Robert Kahan ("R. Kahan"), and his brother, Stewart Kahan ("S. Kahan"), each a fifty-percent owner of Satisfied, and (b) Satisfied's production of documents in the Kentucky Litigation.  Judge Forester recently ordered Satisfied to produce the Kahans for depositions.  The Movant filed the Chapter 15 proceeding and the Application for the sole purpose of preventing these depositions and the production of documents.  BPI sought to depose R. Kahan and S. Kahan, and to obtain a document production from Satisfied, to determine, *inter alia*, whether Satisfied (i) continues to sell products developed using BPI-trade secrets in violation of the preliminary injunction (*e.g.*, BPI has uncovered strong evidence that Satisfied has attempted to sell products subject to the preliminary injunction) and (ii) dissipate cash and other assets to the detriment of BPI and Satisfied's other *bona fide* creditors.

To obtain an extension of the stay during the gap period between the Filing Date and the potential entry of an order of recognition, the Movant must meet the requirements for injunctive

---

[2]    *Brake Parts, Inc., v. David Lewis, Satisfied Brake Products, Inc. and Robert R. Kahan,* Case no. 09-CV-132-KSF, in the United States District Court for the Eastern District of Kentucky (the "District Court").  References to docket entries in the Kentucky Litigation shall be referred to hereinafter as "D.C. Dkt. No. __."

relief, which includes a showing that: (1) the Movant will likely succeed on the merits; (2) the

Movant will suffer immediate and irreparable harm if the injunction is not granted; (3) BPI will

not suffer harm if an injunction is granted; and (4) the issuance of an injunction is in the public

interest.  In this case, the Movant cannot meet any of these requirements.

Here, (a) the Movant's Chapter 15 petition is not meritorious, and, even if an order of

recognition is entered, it is likely that BPI will be granted stay relief to pursue the Kentucky

Litigation, (b) neither Satisfied nor the Movant will suffer irreparable harm if the injunction is

not granted, (c) BPI will be severely harmed if the stay is granted, as it will not be able to

determine if Satisfied continues to dissipate assets and sell products subject to the Preliminary

Injunction, and (d) any injunction would clearly be intended to thwart the existing Kentucky

Litigation in violation of public policy.  Consequently, the Court should deny the Application.

## FACTUAL BACKGROUND

1.      The District Court granted preliminary injunctive relief in favor of BPI and

against Satisfied based on, in the words of Judge Forester, "the worst case of industrial espionage

[he had] ever seen."  The actions which led to Judge Forester's conclusion, the procedural

history of the Kentucky Litigation, and the actual procedural posture of the Canadian

Proceedings are discussed in more detail below.

I.      **Certain Employees of Satisfied Engage In Industrial Espionage Against BPI and
        Misappropriate BPI's Trade Secrets.**

2.      BPI designs and manufactures braking products for a variety of vehicles and has

created over seven hundred related semi-metallic and ceramic formulations.

3.      Satisfied, also a manufacturer of brake pads, competes with BPI.  Unlike BPI,

however, Satisfied does not maintain an independent research and development facility.  In 2000,

Satisfied hired Steve Clare ("Clare"), a former quality control manager for BPI, to serve as its

Vice-President of Operations.  Clare spent the four years preceding his move to Satisfied working for BPI.  When Clare joined Satisfied, he brought with him a binder, which included certain BPI ceramic and semi-metallic formulations (the "BPI Notebook").  At the Injunction Hearings (defined below) before Judge Forester, BPI established, and Satisfied does not dispute, that Satisfied used BPI's semi-metallic and ceramic formulations to create Satisfied's products, which were used and remained in production by Satisfied through entry of the Injunction in December 2010.

4.      As early as 2003, R. Kahan developed and utilized a relationship with David Lewis ("Lewis"), a former employee of BPI, to exploit knowledge, research, and confidential information that Lewis developed while working for BPI, and to help the Kahans interpret stolen BPI formulations.  Then, to ensure the correct manufacture of BPI's formulations at Satisfied, in the late-summer of 2006, Satisfied retained Lewis to provide technical assistance as a "consultant" for Satisfied *while* Lewis was still working for BPI.  To facilitate the relationship, R. Kahan created an email account for Lewis that could not be traced directly to Lewis.  Through that account, Lewis transmitted a total of eight (8) separate, unique, proprietary and confidential BPI formulations to the Kahans and Satisfied.  As a result of Lewis' actions and provision of trade secrets to the Kahans and Satisfied, Satisfied made *at least nine changes* to its ceramic formulations from 2006 to the present, and each one of those changes traces back to a misappropriation of BPI's trade secrets.

## II.  BPI Initiates the Kentucky Litigation Against Satisfied And R. Kahan, And The District Court Grants A Preliminary Injunction In Favor Of BPI.

5.      In April 2009, BPI learned that Lewis was providing BPI's confidential and proprietary information to certain BPI competitors and vendors, resulting in BPI initiating litigation against Lewis in the Eastern District of Kentucky.  (Case No. 09-132, the "Initial

Action"). During discovery in the Initial Action, Lewis admitted that he provided consulting services to Satisfied while employed by Satisfied.

6.      Subsequently, in late 2009, BPI learned that Satisfied had been misappropriating BPI's trade secrets since at least 2006. Through a forensic review of Lewis' computer, conducted as part of a settlement with Lewis in the Initial Action, BPI uncovered this additional evidence of misappropriation. As a result, BPI initiated the Kentucky Litigation against Satisfied and R. Kahan. On September 1, 2010, BPI filed its First Amended Complaint, bringing claims against Satisfied and R. Kahan under the Kentucky Uniform Trade Secrets Act, KRS § 365.880 and for tortious interference with contract. *See* D.C. Dkt. No. 89.

7.      On August 18, 2010, BPI moved for a preliminary injunction to prevent the further misappropriation and use of its confidential and proprietary formulations. *See* D.C. Dkt. No. 72. The District Court held evidentiary hearings on this motion on September 7 and 8, 2010 and again on December 14, 2010 (the "Injunction Hearings").

8.      On December 15, 2010, the District Court granted BPI's Motion for Preliminary Injunction and entered an appropriate order enjoining Satisfied and R. Kahan. (the "Preliminary Injunction"). *See* D.C. Dkt. No. 136.[3]

9.      In issuing the Preliminary Injunction against Satisfied and R. Kahan, the District Court carefully considered and balanced the four well-established preliminary injunction factors and found that:

- Likelihood of BPI's Success on the Merits. In finding a likelihood of success on the merits, the District Court noted that Satisfied and R. Kahan provided no explanation as to why Satisfied's formulations appear to be clones of BPI's, "especially in light of the fact that Satisfied received various BPI formulations."

---

[3]      The Preliminary Injunction was filed under seal in the Kentucky Litigation. BPI, with the agreement of the Movant, has provided the Court with a copy of the Preliminary Injunction and related findings but has not filed it with this Objection.

13403154v.1

- <u>Irreparable Injury to BPI</u>.  In considering irreparable injury, the District Court found that BPI would continue to lose goodwill and its competitive advantage absent a preliminary injunction, and while it was sympathetic that an injunction might place Satisfied out of business, the District Court determined that Satisfied "knowingly and illegally placed itself in a position to be put out of business."

- <u>Strong Public Interest in Favor of Injunction Against Satisfied</u>.  The District Court also found a strong public interest in preventing Satisfied's and R. Kahan's use of BPI's formulations and the resulting unfair competition.

- <u>No Harm to Third Parties</u>.  Finally, the District found that "no harm will result to any third parties by entry of preliminary injunctive relief."

10.     After the District Court issued the Preliminary Injunction, Satisfied and R. Kahan sought to have it stayed pending appeal in the District Court and by the Sixth Court.  In denying their Emergency Motion to Stay, the District Court reiterated "that BPI is indeed likely to succeed on its claims," and that "any harm to Satisfied is the result of Satisfied's own actions in illegally obtaining and using BPI's formulations."  *See* D.C. Dkt. No. 138.  The Sixth Circuit, recognizing the "high deference" afforded to the District Court's decision, reached the same conclusion.

11.     Thereafter, Satisfied and R. Kahan appealed to the Sixth Circuit the Preliminary Injunction.  The parties completed briefing and the Sixth Circuit heard argument on the appeal on April 29, 2011.  The District Court has scheduled trial in the Kentucky Litigation for 2012.  *See* Stiehl Aff., ¶ 4.

## III.    <u>Recent Developments In The Kentucky Litigation Have Led Satisfied To Initiate This Chapter 15 Proceeding.</u>

12.     Pursuant to the Preliminary Injunction, the District Court ordered Satisfied to recall product from the marketplace based, in whole or in part, on BPI's trade secrets or confidential information.  Rather than effectuate the recall, Satisfied attempted to sell *all* of Satisfied's inventory, including products specifically enjoined by name in the Preliminary

Injunction, through back-door channels, including third party brokers and ibrakeparts.com.[4].  *See*

Motion To Hold Defendants In Contempt, D.C. Dkt. No. 171; Stiehl Aff., ¶ 5.

13.     These egregious actions required BPI to, yet again, come before the District Court

seeking relief, this time in the form of a motion for sanctions and to enforce the terms of the

Preliminary Injunction against Satisfied and the Kahans.  BPI's motion for sanctions remains

pending before the District Court.  *See id.*

14.     For the past several months, BPI sought to depose the Kahans to establish the

extent to which Satisfied violated and continues to violate the Preliminary Injunction.  *See* Stiehl

Aff., ¶ 6.  On April 7, 2011, Satisfied filed a motion for protective order staying oral discovery.

*See* D.C. Dkt. No. 190.

15.     On May 10, 2011, the District Court denied Satisfied's motion and ordered

Satisfied to produce R. Kahan and S. Kahan on or before May 24, 2011.  In addition, BPI was

granted leave by the District Court to amend its complaint to add additional defendants

including, *inter alia*, S. Kahan.  *See* D.C. Dkt. No. 193.

16.     On May 11, 2011, BPI counsel confirmed that  "Robert and Stewart Kahan will

be available on May 23 and May 24 in Montreal," and counsel for BPI confirmed his attendance

in Montreal on those dates.  *See* Stiehl Aff., ¶ 7.

17.     On May 16, 2011, Satisfied counsel contacted BPI counsel and indicated that

while R. Kahan would still be produced on May 24, 2011, despite Judge Forrester's order

compelling his production, he would not produce S. Kahan.  In alleged support, Satisfied counsel

informed BPI counsel that Satisfied would be filing for an emergency stay pending a Chapter 15

bankruptcy filing that, if granted, would preclude S. Kahan's deposition.  *See* Stiehl Aff., ¶ 8.

---

[4] The web domain ibrakeparts.com is owned and operated by the Kahans.  *See* Stiehl Aff., ¶ 5.

13403154v.1

18.   Only now, over *five months* after filing its insolvency proceeding in Canada and on the eve of the depositions, has Satisfied elected to commence a Chapter 15 proceeding.

## IV.   The Canadian Proceedings Was Initiated By Corporate Insiders Of Satisfied For Their Own Benefit And, Through The Movant, The Insiders Are Attempting To Circumvent The Preliminary Injunction.

19.   In the Statement of Support,[5] the Movant takes the position that Satisfied is a Canadian corporation with (a) no offices in the United States, (b) its primary office located in Quebec, Canada, and (c) its plan and warehouse situated in Ontario, Canada.  The Movant further attests that Satisfied does not conduct any business in the United States and has ceased all operations.[6]

20.   As explained below, two distinct proceedings pending in Canada related to Satisfied – a restructuring proceeding and a liquidation proceeding through receivership – both of which were orchestrated by the Kahans through related entities.  Based on the Movant's filing, it is unclear whether the Movant is seeking Chapter 15 recognition for the restructuring or the liquidation proceeding.  In addition, the Movant is seeking relief in the Canada Proceeding for the benefit of the Kahans that would result in a violation of the Preliminary Injunction.  The Movant neglects to disclose any of these facts in its Statement of Support or Application.

### A.   The Restructuring Proceeding

21.   On January 10, 2011, Satisfied, as directed by the Kahans, filed a Notice of Intention to file a "proposal" under the BIA.  A "proposal" is analogous to a plan of reorganization that pays creditors over an extended period of time .  Satisfied remains in possession of its business, assets, and affairs in connection with this proceeding.  The Movant, as

---

[5]      Statement in Support of Petition for Entry of an Order Recognizing Canadian Proceedings and Application for Provisional Relief, Dkt. No. 1-2, hereinafter the "Statement in Support."

[6]      *See* Statement in Support, p. 2-4.

13403154v.1

"trustee," functions as a very limited administrator, assessing Satisfied's ability to make the proposal, monitoring the process, and assisting Satisfied with mandatory filing requirements. Satisfied and its management, including the Kahans, are responsible for filing, preparing, and implementing any proposal.  This proceeding, therefore, cannot be recognized as a foreign proceeding under Chapter 15 because the Movant does not act as Satisfied's "foreign representative."

22.    The only stay of proceedings that is in effect in Canada is with respect to the restructuring proceeding; there is no stay applicable to the liquidation proceeding.  Satisfied has ceased all business operations, has no intention to resume operations going forward, and has no business to restructure.  Based on the Satisfied's assets and liabilities, Satisfied's secured creditors can recover only a portion of claims, with no reasonable prospect of recovery for unsecured creditors.  Here, the only realistic outcome is a liquidation.

## B.    The Liquidation Proceeding

23.    The Movant lists 139320 Canada, Inc. ("139320"), 2149-5460 Quebec, Inc. ("2149-5460"), 2930587 Canada, Inc. ("2930587") (collectively, the "Canadian Creditors"), and the Bank of Montreal ("BMO") as Satisfied's secured creditors.[7]  All of Satisfied's secured debt, including debt previously held by BMO, is now held and controlled by the Canadian Creditors, each of which is owned or controlled by the Kahans.[8]  See Stiehl Aff., ¶ 9.

24.    On January 12, 2011, 139320 filed a motion under the BIA seeking the appointment of the Movant as receiver of Satisfied's assets.  Satisfied's unsecured creditors were

---

[7]    See Statement in Support, Ex. A.

[8]    139320 is a Canadian corporation, with S. Kahan as its director and sole officer. 139320 purchased the BMO indebtedness (a line of credit) on January 10, 2011. 2149-5460 is a Canadian corporation, with the Kahans as its directors and officers and S. Kahan, 2930587, and 139320 as its shareholders. 2930587 is a Canadian Corporation, with R. Kahan as its director and sole officer.

13403154v.1

not served with the motion, which was unopposed by Satisfied because the Kahans own and

control both Satisfied and 139320.  On January 12, 2011, the Quebec Superior Court issued an

order appointing the Movant as Satisfied's receiver.  *See* Stiehl Aff., ¶ 10.

25.    The primary role of the Movant as receiver is to liquidate Satisfied's assets.  The

Movant, in its capacity as receiver, filed a motion seeking authorization from the Quebec

Superior Court to sell Satisfied's assets and inventories, including inventories subject to the

Preliminary Injunction.  Of course, this request is inconsistent with the Movant's duties as

"trustee" in Satisfied's restructuring proceeding.  *See* Stiehl Aff., ¶ 11.

26.    To compel compliance with the Preliminary Injunction, BPI moved the Quebec

Superior Court to declare that the Preliminary Injunctive was applicable to the Movant and his

attempts to sell Satisfied's assets.  The Movant's sale motion and BPI's objections thereto

remain pending and are scheduled for hearing on June 9, 2011.  *See* Stiehl Aff., ¶ 12.

27.    On the one hand, the Movant purportedly is assisting with a restructuring

"proposal" for Satisfied (which the Kahans own and control).  On the other hand, the Movant is

attempting to sell Satisfied's inventory for the benefit of its secured creditors (which the Kahans

own and control) in violation of the Preliminary Injunction.  Now, the Movant is seeking

injunctive relief from this Court to prevent BPI from deposing the Kahans and pursuing its

claims in the Kentucky Litigation.  Given these circumstances, the Movant appears to be a

"shill" for the Kahans.

## ARGUMENT

Chapter 15 is not intended as a quick-solve litigation tactic by unscrupulous litigants.

*See, e.g., In re Wally Findlay Galleries, Inc.*, 36 B.R. 849, 841 (Bankr. S.D.N.Y. 1984)

(dismissing case because debtor filed petition as "a litigation tactic").  Rather, to obtain an

extension of the automatic stay during the gap period from the Filing Date through the potential

entry of an order of recognition, the Movant must meet the requirements for injunctive relief. *See* 11 U.S.C. § 1519(e).

This Court, in determining whether to grant the request for injunctive relief, must consider the balance of four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *See Sandison v. Michigan High Sch. Athletic Ass'n*, 64 F.3d 1026, 1030 (6th Cir. 1995).

"A preliminary injunction is an extraordinary remedy that should only be granted when the movant carries its burden of persuasion." *Leary v. Daeschner,* 228 F.3d 729, 739 (6th Cir. 2000). This Court must "make specific findings concerning each of these four factors, unless fewer are dispositive of the issue." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985).

In support of a preliminary injunction, the movant must provide admissible evidence in the form of a sworn affidavit. *See* 11 U.S.C. § 1519(e) ("The standards, procedures, and limitations applicable to an injunction shall apply to relief under this section."); *see also Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.,* 511 F.3d 535, 552 (6th Cir. 2007) (holding Federal Rule of Civil Procedure 65 governs the issuance of preliminary injunctions). Here, the Movant has failed to provide any supporting declarations sufficient to meet this burden. If there is a disputed factual issue, and the evidence before the court is inadequate to form a an informed preliminary conclusion, then an evidentiary hearing is required. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.,* 511 F.3d at 552.

13403154v.1

With respect to the Application, the Movant cannot meet its heavy burden of establishing

the necessary cause for the issuance of a preliminary injunction, and therefore this Court should

deny the Movant's request to extend the automatic stay.

**I.      The Movant Seeks To Avoid The District Court's Order, Which Is Against The Public Policy.**

The Movant and Satisfied had numerous opportunities to seek to stay the Kentucky

Litigation at any point over the past five months.  Nonetheless, the Movant and Satisfied pursued

a Sixth Circuit appeal of the Preliminary Injunction and motion practice to limit the scope of

discovery in the Kentucky Litigation.  Only after the District Court entered an order compelling

the Kahans to appear for deposition did the Movant file the Chapter 15 petition and the

Application.

Courts generally will not condone the initiation of a bankruptcy case if utilized solely as a

litigation tactic.  For example, in addressing whether a debtor has initiated a case in bad faith,

courts have recognized a non-exclusive list of factors which show "an intent to abuse the judicial

process and the purposes of reorganization provisions." *In re Dixie Broadcasting, Inc.*, 871 F.2d

1023, 1027 (11th Cir. 1989).  These factors include, among others, the timing of the filing of the

petition, and whether the petition was filed to circumvent pending litigation.  *See id.* (finding bad

faith where debtor filed petition to avoid imminent adverse ruling in state court litigation); *In re

Smith*, 58 B.R. 448 (Bankr. W.D.Ky. 1986) (finding bad faith where debtor filed petition to stay

pending litigation rather than post a supersedeas bond); *In re Wally Findlay Galleries, Inc.*, 36

B.R. 849, 841 (Bankr. S.D.N.Y. 1984) (dismissing case because debtor filed petition as "a

litigation tactic").

As explained above, the Movant filed both the Chapter 15 Petition and the Application in

bad faith for the sole purpose of circumventing the Kentucky Litigation and to prevent Satisfied

13403154v.1

from having to, *inter alia*, comply with the District Court's order compelling the depositions of

the Kahans.  This use of the Application, and the Movant's attempt to extend the automatic stay

to protect the Kahans from deposition, is against the public policy.  *See, e.g.*, *Antioch Co. v.*

*Western Trimming Corp.*, Case No. C-3-98-236, 1998 U.S. Dist. LEXIS 23363 (S.D. Ohio Aug.

24, 1998) (denying motion for injunction pending appeal because, among other reasons, the

public interest favors both competition and the protection of trademark rights).  Therefore, this

Court should deny the Application.

## II.    The Movant Has Not Established Any Immediate Harm Or Injury If The Application Is Not Granted.

In order to obtain a preliminary injunction, the harm that would result in the absence of

the injunction must be irreparable, not merely substantial.  *See Sampson v. Murray,* 415 U.S. 61,

94 S. Ct. 937, 39 L. Ed. 2d 166 (1974).  Here, the Movant has not, and indeed cannot, advance

any facts demonstrating irreparable harm to Satisfied or its creditors.

As described above, Satisfied claims no assets in the U.S.  BPI is one of its few U.S.-

based creditors.  The Movant references no facts as to how the Kentucky Litigation has impaired

or distracted Satisfied from seeking to reorganize.  To date, BPI has not initiated any collection

efforts against Satisfied, and has only sought to stop Satisfied from stealing its trade secrets.  *See*

Stiehl Aff., ¶ 13.

Only now, over five months into the Canadian Proceedings, does the Movant contend

that the Kentucky Litigation will distract him from performing his duties.  The Movant's

arguments in support of the alleged irreparable harm - including his claims that (a) BPI is

actively pursuing the case to the detriment of other creditors and (b) the Kentucky Litigation will

disrupt the "organized distribution and dissolution process" - find no evidentiary support in the

record.

The Kentucky Litigation has been pending since Satisfied initiated the Canadian

Proceedings in January 2011.  During this time, Satisfied and BPI have engaged in (i) briefing

before the Sixth Circuit on Satisfied's appeal of the Preliminary Injunction and (ii) numerous

discovery disputes with respect to the pending Kentucky Litigation.  Notably, the Movant has not

(and cannot) substitute into the Kentucky Litigation, and has not made an appearance or taken

any role in the Kentucky Litigation.  In suggesting that he has only two more months to present a

proposal in the Canadian Proceedings, the Movant neglects to mention that he has already had

over *five months* to put forth such a proposal, and *proposed nothing*.

The Movant's delay, both in initiating the Chapter 15 proceeding and proposing any

proposal in the Canadian Proceedings, belies any argument that the Kentucky Litigation has truly

affected the "distribution and dissolution process."  The Movant also fails to provide any basis

for how the Kentucky Litigation has been "to the detriment of other creditors."  Allowing

discovery to continue will not and should not prevent the Movant from complying with his

statutory requirements under the BIA.  If anything, Satisfied's efforts to steal and utilize trade

secrets has damaged legitimate creditors, including substantial damage to BPI.

Moreover, the relief sought in the Application will not insulate R. Kahan and S. Kahan

from deposition in the Kentucky Litigation.  R. Kahan and S. Kahan are defendants in the

Kentucky Litigation, separate from their status as corporate insiders of Satisfied.  The automatic

stay does not, and cannot, shield them from deposition as defendants in the Kentucky Litigation.[9]

---

[9]    The automatic stays only affects "the commencement or continuation … of a judicial, administrative, or other action or proceeding *against the debtor*." 11 U.S.C. § 362(a) (emphasis added). The requirement that an action be against a debtor in order for the automatic stay to apply is strictly construed, and codefendants in the same action are not be protected by the automatic stay if they have not filed for bankruptcy protection themselves. See*, e.g., Teachers Ins. and Annuity Ass'n of America v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986); *see also* 2 Collier on Bankruptcy ¶ 362.03 (15th ed. rev. 2008) ("[the stay] does not protect separate legal entities, such as corporate directors, officers or affiliates").

14

13403154v.1

Thus, no irreparable harm can accrue to the Movant or Satisfied if the Kahans are forced to appear for deposition.

For these reasons, the Application fails because the Movant cannot show irreparable harm that will result without an extension of the automatic stay.

III.    **The Movant Is Not Likely To Succeed On The Merits With Respect To The Chapter 15 Petition Or Contesting Stay Relief With Respect To The Kentucky Litigation.**

The Movant argues that he is likely to succeed "because the relief requested is what will occur upon recognition of the Foreign Main Proceeding anyway."[10]  This "relief" referenced by the Movant - the stay of the Kentucky Litigation - is premised on two things: (a) granting an order of recognition with respect to the Chapter 15 petition, and (b) finding that BPI is not entitled to relief from the automatic stay to pursue the Kentucky Litigation.  Here, the Movant must show a strong likelihood of success on the merits.  *USACO Coal Co. v. Carbomin Energy, Inc.,* 689 F.2d 94, 98 (6th Cir. 1982).  Since the Movant cannot meet this burden as to either issue, the Application should fail.

A.    **Serious Issues Exist With Respect To The Bona Fide Nature Of the Canadian Proceedings And The Movant's Role As The Trustee In Such Proceeding.**

As discussed above, the Kahans have orchestrated two separate "foreign proceedings" for Satisfied.  The concurrent operation of Satisfied's two BIA proceedings - one a restructuring proceeding and the other a liquidation proceeding - is highly unusual.  The Movant is engaged in conflicting roles as the "trustee" of the restructuring proceeding and the "receiver" of the liquidation proceeding.  Here, it is not clear which proceeding is the subject of his Chapter 15 petition or under which proceeding the Movant is acting.  In his Statement in Support, the Movant conflates and interchangeably describes different aspects of each proceeding.  Without

---

[10]    Application, ¶ 10.

13403154v.1

further clarification, this Court cannot and should not recognize either proceeding as a "Foreign Main Proceeding" for purposes of section 1517 of the Bankruptcy Code.

BPI also has asserted several objections to the good faith of the Canadian Proceedings and the control asserted by the Kahans over the Movant and the dual proceedings pending in Canada. In the liquidation proceeding, the Movant is seeking authority to sell, and BPI is contesting, a sale order in the liquidation proceeding that would be in direct conflict with the terms of the Preliminary Injunction. In the next few months, the Canadian courts may very well conclude that both of the Canadian Proceedings are improper, rendering this Chapter 15 proceeding moot. This Court, therefore, should not grant injunctive relief against BPI where such relief is premised on foreign proceedings that appear to be inherently flawed and manipulated by the debtor's insiders for their own benefit.

**B.      To The Extent This Court Grants An Order of Recognition, BPI Will Seek, And Will Likely Obtain, Relief From The Automatic Stay.**

The Movant admits that he only filed the Application to stay the Kentucky Litigation.[11] Therefore, the Movant's ability to stay this litigation is at the heart of his request for relief under Bankruptcy Code section 1519(a), and should be considered by this Court in determining whether the Movant is likely to succeed on the merits. Even if this Court ultimately recognizes one of the Canadian Proceedings as a foreign main proceeding, BPI will seek and prevail on a request for stay relief with respect to the Kentucky Litigation.

This Court may terminate the stay for "cause" under Bankruptcy Code section 362(d) to permit the Kentucky Litigation to continue before the District Court. *See*, *e.g.*, *In re Roberto*, Case No. 96-60616, 1997 Bankr. LEXIS 1522, *7 (Bankr. N.D. Ohio 1997) (granting creditor relief from stay to pursue claims against debtor in state court). Pursuant to Bankruptcy Code

---

[11]      *See* Application, ¶ 3.

section 362(g), while BPI has the initial burden to establish a *prima facie* case for stay relief, the

Movant has the ultimate burden of proof (*i.e.,* the burden of persuasion) to demonstrate that the

stay should not be terminated. *See* 11 U.S.C. § 362(g) (the party opposing stay relief has the

burden of proof on all issues other than the debtor's equity in property).

Courts apply a balancing test to determine whether "cause" exists, weighing the interests

of the estate against the hardships that will be incurred by the parties to the litigation. *See In re*

*Roberto* at *7. Courts consider a variety of factors in weighing these interests, including: (1) the

hardships to the plaintiff-creditor of protracted litigation; (2) the expense of time and money to

the debtor in defending the action; (3) the aging of evidence, loss of witnesses, and crowded

court dockets such that the plaintiff, by having to wait, may effectively be denied an opportunity

to litigate; (4) whether the estate can be protected properly by a requirement that the plaintiff

seek enforcement of any judgment through the bankruptcy court; and (5) whether the issues in

the pending litigation involve only state law, so that the expertise of the bankruptcy court is

unnecessary. *See id*.

Here, neither Satisfied nor the Movant will experience any hardship resulting from a

continuance of the Kentucky Litigation, and BPI will experience substantial hardship if the

litigation is stayed. In particular, given the evidence that Satisfied violated (and may continue to

violate) the Preliminary Injunction, BPI will be substantially prejudiced if it is not allowed to

continue the litigation, particularly since it is seeking discovery to determine these extent of

Satisfied's violations. These efforts should be allowed to continue under the oversight of the

District Court.

Furthermore, BPI eventually will need to liquidate its claim against Satisfied as part of

any insolvency proceeding, which will necessarily require some tribunal to weigh both BPI's

13403154v.1

claims and Satisfied's alleged defenses (if any).  There is no suggestion that any court, including

this Court, would be better able to perform this function than the District Court.  Moreover, it is

unclear how Satisfied's expense in the District Court is greater than it would be if a new tribunal

had to "start from scratch" in evaluating BPI's trade secret claims.  Finally, to recover against

Satisfied, BPI may need to pursue its claim in the Canadian Proceedings, as Satisfied has no U.S.

assets from which BPI can recover.  *See, e.g., In re Bock Laundry Machine Co.*, 37 B.R. 564,

566 (N.D. Ohio 1984) (terminating stay to permit pending litigation to continue in another

forum, provided that plaintiff seek enforcement of any judgment only by filing a proof of claim

in the bankruptcy court).  Finally, the issues addressed in the Kentucky Litigation clearly involve

state law issues.  For these reasons, this Court should grant stay relief to BPI under Bankruptcy

Code section 362(d).

 Moreover, the Court also could chose to grant stay relief based on the Movant's bad faith

in filing the Chapter 15 petition.  As described above, one of the issues to be addressed in the

Canadian Proceedings is the good faith of the Canadian Proceedings and the control asserted by

the Kahans over this process and with respect to the Movant.  To the extent the Canadian

Proceedings was initiated or the Chapter 15 petition was filed for improper reasons, any such bad

faith should also support relief from the automatic stay with respect to the Kentucky Litigation.

*See, e.g., In re Laguna Associates Limited Partnership*, 30 F.3d 734 (6th Cir. 1994) (stay relief

was proper because debtor filed chapter 11 petition in bad faith).

 In addition to stay relief, discretionary abstention is appropriate with respect to the

Kentucky Litigation.  *See* 28 U.S.C. § 1334(c)(1) (allowing the Court to abstain "in the interest

of justice, or in the interest of comity with State courts or respect for State law").  When

determining whether discretionary abstention is appropriate, courts consider numerous factors,

13403154v.1

18

including: (1) the extent to which state law issues predominate over bankruptcy issues, (2) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (3) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (4) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, and (5) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court.  *See, e.g., In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 6 F.3d 1184 (7th Cir. 1993).  Here, any analysis of these factors will largely mirror the balancing test for stay relief described above and thus support permissive abstention.

For these reasons, this Court is likely to grant stay relief to BPI with respect to, or abstain from addressing, the Kentucky Litigation.  Consequently, the Movant cannot show a substantial likelihood of success on the merits, and therefore the Motion should be denied.

## IV.    BPI Will Be Harmed By A Stay of The Kentucky Litigation.

It is critical that both the depositions of the Kahans and the document production by Satisfied continue.  BPI needs this discovery to prevent harm to it that has occurred and will continue to occur as a result of Satisfied's past and continuing violations of the Preliminary Injunction.  The depositions and document production are necessary to identify, *inter alia*:

- the back-door channels through which Satisfied has been selling inventory in violation of the Preliminary Injunction;

- the inventory that has been sold through such channels in violation of the Preliminary Injunction;

- the individuals and entities involved in such violations;

- the dollars that have exchanged hands in connection with such violations;

- all other information that will assist BPI and the District Court in the identification of past, present, and continuing violations of the Injunctive Order; and,

- information pertaining to a potential fraudulent transfer of several million dollars of Satisfied's funds to its insiders, which effectively drained Satisfied of its capital.

Absent the ability to obtain this and other information through depositions and discovery in the Kentucky Litigation, BPI will be severely harmed by the theft of its trade secrets, the unjust enrichment of those individuals and entities that profit from such theft, and the inability to effectively enforce the Preliminary Injunction.

Moreover, after carefully considering and denying Satisfied's motion for a protective order, Judge Forester ordered Satisfied to produce the Kahans for deposition. In an attempt to circumvent that order, Satisfied now asks this Court to impose a stay on the depositions and the entire Kentucky Litigation. Such conduct is an abuse of the judicial process, an improper use of bankruptcy proceedings, and constitutes bad faith warranting denial of the Application and dismissal of the Chapter 15 petition. *See* Section I, *supra*.

13403154v.1

## CONCLUSION

For the reasons stated herein, BMI respectfully requests that this Court deny the

Application and grant such other and further relief as the Court deems just and proper.

Dated: May 18, 2011                          Respectfully Submitted:

                                             FROST BROWN TODD LLC


                                             By:    /s/ Adam R. Kegley
                                                    Adam R. Kegley
                                                    Lexington Financial Center
                                                    250 West Main, Suite 2800
                                                    Lexington, Kentucky  40507-1749

                                                    Jason J. DeJonker (*Pro Hac Vice Pending*)
                                                    SEYFARTH SHAW LLP
                                                    131 S. Dearborn St., Ste. 2400
                                                    Chicago, Illinois 60603
                                                    (312) 460-5000 (telephone)
                                                    (312) 460-7000 (facsimile)

                                                    **Attorneys for Brake Parts, Inc.**


## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing was served on the 18th day
of May, 2011 to all parties served by the Court via CM/ECF noticing.

                                             /s/ Adam R. Kegley
                                             Attorney for Brake Parts, Inc.

13403154v.1